## Visnov et ux. v. Levy

*I. Irving Tubis*, for plaintiffs.

*Max D. Palitz*, for defendant.

FLOOD, J., January 27, 1955.—Judgment was entered in ejectment for the leased premises in the above case for failure to pay rent when due. The lease, dated June 1, 1953, provided that the rent should be payable in lawful money of the United States on the first of each month and that time was of the essence. The rent due April 1, 1954, was paid by check dated that day and received by plaintiff on April 2nd. The check was deposited by plaintiffs in their own bank on April 6th. On April 13th they received from their bank a notice, dated April 12, 1954, that the check had been returned marked "N. S. F.". On April 18th defendant received a letter from plaintiff, dated April 16th, giving defendant 90 days' notice to quit under the lease for failure to pay rent as required under the lease.

The rent had been paid by check consistently from the beginning of the lease and therefore any requirement to pay in cash had long since been waived by the course of performance between the parties.

All of the checks commencing with that for June 1, 1953, were received by plaintiffs later than the first day of the month (ranging from the second to the sixth) until the rent due January 1, 1954. The March check was received on March 2, 1954. Under these circumstances it appears clear that the provision that time was of the essence also is inoperative because of the course of performance acquiesced in by plaintiffs.

This reduces the question before us to whether the facts set forth constitute so substantial a breach as

to warrant a forfeiture of the lease, carrying with it defendant's option to purchase. We do not believe that it was. A check was received by plaintiffs on the second day of the month and was not deposited in their own bank until the sixth. We have no information in the stipulation as to the status of defendant's account with the drawee bank between April 2nd and April 6th. There is a serious question as to whether the drawer of the check would not have been discharged by the delay in presentation. It was plaintiffs' duty as the law stood in April 1954, to present the check promptly to the drawee, although section 3-503 (2a) of the Uniform Commercial Code of April 6, 1953, P. L. 3, which became effective thereafter, provided that presentation within 30 days is presumed to be within a reasonable time. It is clear that defendants' obligation to plaintiffs would have been completely discharged if anything had happened during that period which made it impossible for drawee to pay the check through no fault of defendant. While we do not hold that it is necessarily negligent on the part of the holders not to present the check within the period when it would have operated as a discharge in the case of failure of the drawee, yet it has some bearing upon plaintiffs' right to declare a forfeiture when the check was dishonored.

We do not know when the check was dishonored, except that it was sometime between April 6th when the check was deposited at plaintiff's bank and April 12th when plaintiffs' bank wrote to the plaintiffs that the drawee had returned the check marked "N. S. F.". It is to be noted that it is now the law under the code, section 3-802, that where a check is taken for an underlying obligation, here the obligation to pay the rent in cash, the obligation is suspended pro tanto until the presentation of the check. This presumably was law in Pennsylvania before the code. See Pennsylvania Bar

Association notes, sec. 3-802 of the code, 12-A PS §3-802. This would indicate that the crucial date is not earlier than April 12th since on the question of forfeiture we must take all intendments in favor of defendant. It may have been on any date up to April 11th for all we know. When we add to this the fact that a new and good check was forthcoming promptly upon notice, we do not believe that forfeiture should be decreed. This is a situation in which plaintiffs' position is not even as strong as it was in Feinstein v. Siskin et al., 69 D. & C. 90 (1949), where the judgment of forfeiture was opened. We think the matter should be fully explored and the facts determined after a full hearing before a default judgment of forfeiture should be allowed to stand.

And now, January 27, 1955, the rule to open judgment is made absolute.